**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC., DBA THE FAIR HOUSING CENTER** | : | |
| | : | |
| **326 N. Erie Street** | | |
| **Toledo, OH 43604** | : | **Judge:** |
| | | **Case No. 3:23-cv-01243** |
| **AND** | : | |
| | : | |
| **HENRY REED** | : | |
| **116 Grand Avenue** | | |
| **Toledo, OH 43606** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **5109 SECOR, LLC** | | |
| **ATTN: Bruce Schoenberger, registered agent** | : | |
| **One Seagate, Suite 1645** | | |
| **Toledo, Ohio 43604** | : | |
| | : | |
| **and** | : | |
| | : | |
| **KWAPICH REAL ESTATE COMPANIES** | : | |
| **ATTN: Willis Law Firm** | | |
| **1160 Goodale Blvd.** | : | |
| **Grandview Heights, OH 43212** | | |
| | : | |
| **and** | : | |
| | : | |
| **RIVER ASSET MANAGEMENT, LLC** | : | |
| **ATTN: Bruce Schoenberger, registered agent** | : | **COMPLAINT** |
| **One Seagate, Suite 1645** | | **JURY TRIAL DEMANDED** |
| **Toledo, Ohio 43604** | : | |
| | : | |
| **Defendants.** | : | |

1

# COMPLAINT

Now come Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc. DBA The Fair Housing Center or Toledo Fair Housing Center ("Plaintiff" or "The Fair Housing Center" or "TFHC"), and Henry Reed ("Plaintiff" or "Mr. Reed"), (collectively referred to as "Plaintiffs"), by and through counsel, and hereby state for their Complaint the following:

## INTRODUCTION

1. Plaintiffs bring this action for declaratory, injunctive, and monetary relief against 5109 Secor, LLC, Kwapich Real Estate Companies, and River Asset Management, LLC, collectively ("Defendants"), for discrimination on the basis of race and color in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*., the federal Fair Housing Amendments Act of 1988 ("FHAA"), and the fair housing laws of the state of Ohio, Ohio Rev. Code § 4112.01, *et seq.*, (collectively the "Fair Housing Laws").

2. The Fair Housing Act and Fair Housing Laws prohibit both intentional discrimination and discrimination in effect. The United States Department of Housing and Urban Development ("HUD") issued Guidance in 2016 on the use of Criminal Records by Housing Providers that described how the discriminatory effect and disparate treatment methods of proof apply.[1]

3. The Ohio Civil Rights Commission determined that it was probable that Defendants engaged in an unlawful discriminatory practice on the basis of race and color in violation of Chapter 4112 of the Ohio Revised Code.

---

[1] See U.S. Dept. of Housing and Urban Development, Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real-Estate Related Transaction. April 4, 2016.

4.  Refusing to rent or denying housing opportunities to individuals based on their criminal convictions, when such policies disproportionately affect Black African American males, constitutes discrimination based on race and color in violation of the Fair Housing Act.

5.  African American males are more likely to be disproportionately impacted by criminal justice policies and to have higher rates of criminal convictions compared to individuals of other races. As a result, policies, like Defendants' policies, that categorically deny housing opportunities to individuals with criminal records have a disparate impact on African American males, perpetuating housing disparities and contributing to systemic racial inequalities.

6.  Defendants' refusal to renew Mr. Reed's lease, negotiate, or provide housing to the Plaintiff solely based on his criminal conviction is a direct manifestation of discriminatory practices that are rooted in stereotypes and prejudices associated with race and color. By implementing and enforcing such criminal conviction policies, Defendants perpetuate the stigmatization of Black African American males and further perpetuate systemic racial discrimination in housing.

7.  Defendants' actions have a discriminatory effect on the Plaintiff and other Black, African American males, depriving them of an equal opportunity to secure housing  and perpetuating housing disparities based on race and color. Such discrimination based on race and color violates the Fair Housing Act, specifically 42 U.S.C. § 3604(a) and (a)(2), which prohibits discrimination in the rental or sale of housing based on race or color.

8.  Defendants' policies and practices, by relying solely on criminal convictions as a basis for denying housing opportunities, disproportionately impact black African American males,

leading to a perpetuation of housing segregation and unequal treatment based on race and color.

9. By refusing to rent, negotiate in good faith, or provide housing to the Plaintiff solely based on his criminal conviction, Defendants violated the federal Fair Housing Act and Ohio Rev. Code § 4112, *et seq.*, which seeks to eliminate housing discrimination and promote equal opportunity and access to housing for all individuals, regardless of race or color.

10. Defendants refused to rent, negotiate, or deal with Mr. Reed because of his race and color and therefore made housing unavailable.

11. Defendants subjected Mr. Reed to differential treatment in the terms and conditions of leasing, renting, and renewing an apartment unit because of his race and color.

12. Such refusal to deal and subjecting Mr. Reed to different terms and conditions of renting, leasing, and renewing a unit constitutes race and color discrimination under the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*., and Ohio Rev. Code § 4112.02(H).

13. Defendants leasing policies and procedures with respect to their criminal convictions ban, and failure to conduct individualized assessments of applicants, violate the Fair Housing Laws.

14. Defendants' actions and enforcement of their discriminatory policies violate the Fair Housing Laws, and their rental practices have harsh consequences for Black and African American residents who are routinely denied housing opportunities because of Defendants' discriminatory conduct.

15. Statistics show that Black, African American men, such as the Plaintiff, are arrested, convicted, and incarcerated at rates disproportionate to their share of the general population. This is true both nationally and locally in Toledo, Lucas County, Ohio.

4

16. African Americans make up approximately 20% of the population of Lucas County; however, 59% of the incarcerated population in Lucas County are African American.[2]

17. Caucasians make up 69% of the population in Lucas County; however, only 38% of the incarcerated population in Lucas County are Caucasian.



18. Nationally, the imprisonment rates for African Americans are almost six times greater on average than for Caucasians.

19. As such, Defendants' failure to conduct an individualized assessment of Mr. Reed's application after learning of his criminal conviction is and was discriminatory.

20. Defendants failed to take into consideration Mr. Reed's previous rental history, his perfect behavior since the criminal conviction, and other mitigating factors such as the factual circumstances of the crime, his propensity to reoffend, and any recommendation letters that could have been offered by past housing providers, employers, or jail staff.

21. Defendants' policy disallowing tenants with a criminal conviction for assault, without conducting an individualized assessment, has a discriminatory effect on Mr. Reed and similar applicants. Such policies and procedures harm Plaintiffs and force The Fair Housing Center to conduct programming regarding criminal conviction bans.

---

[2] See Vera Incarceration Trends, Lucas County, Ohio https://trends.vera.org/state/OH/county/lucas_county (updated February 14, 2023).

22. Defendants' policies and procedures are not necessary to achieve a substantial, legitimate, nondiscriminatory interest.

23. Less discriminatory alternatives are available such as conducting an individualized assessment of applicants like Mr. Reed.

24. Defendants would have been required to renew Mr. Reed's lease if they conducted an individualized assessment because he was already residing at the Subject Property, was convicted over five years prior to when Respondent determined he was ineligible, had no incidents at the Subject Property, and was a model tenant in his time at the Defendants' property.

25. Defendants' actions, policies, and practices, as described herein, violate the federal fair housing laws, 42 U.S.C. 3601, *et seq*.; and the Ohio Fair Housing Law found at Ohio Rev. Code §4112.02(H), *et seq.*

## PARTIES

26. Plaintiff, Fair Housing Opportunities of Northwest Ohio, Inc. DBA The Fair Housing Center, is a private, non-profit corporation, organized under the laws of the State of Ohio. The Fair Housing Center's mission is to be a nonprofit civil rights agency that promotes housing choice, the creation of inclusive communities of opportunity, and the protection and expansion of fair housing rights to support strong communities free from housing discrimination.

27. Plaintiff, The Fair Housing Center, routinely advocates on behalf of clients when housing providers violate the Fair Housing Laws; provides training and education to housing providers to avoid discrimination; and conducts investigations, including testing, to ensure civil rights law are being followed in housing accommodations, services, and transactions.

28. Plaintiff, Henry Reed, is a Black, African American resident of Toledo, Ohio and former resident at Defendants' apartment complex known as Secor Flats. Mr. Reed is protected from housing discrimination on the basis of race and color.

29. Defendant, 5109 Secor, LLC, is an Ohio corporation. 5109 Secor, LLC owns the subject property located at 5109 Secor Road, Toledo, Ohio 43623 (the "Subject Property" or "Secor Flats").

30. Defendant, Kwapich Real Estate Companies, is or was a real estate management company assigned to manage the Subject Property known as Secor Flats. Upon information and belief, Kwapich Real Estate Companies became River Asset Management during the administrative action with the Ohio Civil Rights Commission.

31. Defendant, River Asset Management, LLC is a large full-service real estate investment, management, sales, and redevelopment firm located in Northwest Ohio. River Asset Management conducts business in Toledo, OH, Bowling Green, OH, Sylvania, OH, Columbus, OH, Point Place, OH, Perrysburg, OH, and Oregon, OH. Defendant, River Asset Management, services and manages the Subject Property known as Secor Flats for the Defendant, 5109 Secor, LLC.

## JURISDICTION AND VENUE

32. Jurisdiction is appropriate in that this civil action is brought under the federal Fair Housing Act ("FHA") and federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, *et seq.*

33. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises federal questions under the FHA and FHAA.

34. This Court has supplemental jurisdiction over related state law claims, Ohio Rev. Code § 4112, *et seq*. (the "Ohio Fair Housing Act"), *et seq*. under 28 U.S.C. § 1367.

35. Defendants are subject to the jurisdiction of this Court as they are "Persons" under the FHA and Ohio Fair Housing Act, and the acts described herein occurred in Toledo, Ohio.

36. Additionally, the Defendants are subject to the jurisdiction of the Court as they conduct business across Ohio, including but not limited to: owning property, managing property, leasing property, and performing contractual obligations in Ohio.

37. Venue is proper in that the Defendant's discriminatory acts primarily occurred in Toledo, Lucas County, Ohio.

38. Wherefore, Plaintiff respectfully request that this Court take jurisdiction of this Complaint and award such relief as is appropriate under the federal and state Fair Housing Laws.

**FACTS**

39. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 38 as if fully restated herein.

40. Plaintiff, Henry Reed, is a Black, African American male residing in Toledo, OH.

41. Mr. Reed resided at Secor Flats from June 1, 2020 through his lease termination date without incident.

42. On or around December 15, 2020, Wassef Property Management LLC transferred the Subject Property to Defendant, 5109 Secor, LLC.

43. Defendant, 5109 Secor, LLC, immediately took ownership and control of the Subject Property and assigned property and residential management services to Defendants, Kwapich Real Estate Companies now doing business as River Asset Management, LLC.

44. On or around November 12, 2021, Defendants ran a background check and credit check on Mr. Reed.

45. Defendants background check discovered that Mr. Reed had a criminal history dating back to 2015.

46. In November 2021, Defendants issued Mr. Reed a notice of lease termination, attached as Exhibit 1.

47. Defendants' notice of lease termination included a statement that his renewal application was denied due to his criminal history.

48. Mr. Reed was on a month-to-month lease.

49. Mr. Reed complained to Defendants about their decision to refuse to rent to him because of a criminal conviction that was six years old at the time of the notice of lease termination.

50. Defendants wrongfully terminated the lease of Mr. Reed because of his criminal conviction.

51. Mr. Reed reached out to Plaintiff, The Fair Housing Center, for assistance.

52. Plaintiff, The Fair Housing Center, immediately diverted its scarce and limited resources to conduct research, advise Mr. Reed, represent Mr. Reed, and attempt to offset the discriminatory treatment that Mr. Reed was experiencing because of Defendants' unlawful criminal convictions ban.

53. In May 2022, Plaintiffs filed complaints with the Ohio Civil Rights Commission ("OCRC") alleging that Defendants violating the Fair Housing Act by enforcing their criminal convictions ban against Mr. Reed which had a discriminatory effect on him as an African American male.

54. After an extensive investigation, OCRC determined that Defendants' criminal convictions ban as applied to Mr. Reed violated the Fair Housing Laws on the basis of race. The OCRC Letter of Determination is attached as Exhibit 2.

55. Defendants requested a reconsideration from OCRC and were unsuccessful in their reconsideration request.

56. Mr. Reed was never late on a rental payment.

57. Defendants never received any complaints regarding Mr. Reed being a health or safety threat.

58. Mr. Reed has had no new criminal charges or complaints since his arrest in 2015.

59. Defendants admitted that felonious assault will always lead to a denial of housing opportunity, which constitutes a blanket ban on persons with criminal convictions.

60. Defendants failed to conduct an individualized assessment of Mr. Reed's ability to continue renting the unit.

61. Upon information and belief, Defendants routinely fail to conduct individualized assessments on applicants in violation of the Fair Housing Laws.

62. Defendants failed to consider mitigating evidence such as Mr. Reed's behavior at the Subject Property, his propensity to reoffend, recommendations from other housing providers and/or employers, or recommendations from jail staff.

**INJURY TO PLAINTIFFS**

63. Defendants refused to rent to Mr. Reed or negotiate with him because of their blanket ban on persons with criminal records.

64. Defendants subjected Mr. Reed to differential treatment in the terms, conditions, and privileges, of renting a unit during their application process.

65. Defendant's policies and practices of denying housing opportunities to individuals based on their criminal convictions have a disproportionately discriminatory effect on Black, African American males. Mr. Reed's denial of housing opportunity is a direct result of these discriminatory policies and practices.

66. The Defendants' policies and practices, by treating individuals differently based on race and criminal history, have a disparate impact on Black, African American males, which is in violation of the Fair Housing Laws.

67. Defendants' actions also constitute intentional discrimination and have perpetuated housing disparities in violation of the Fair Housing Laws.

68. Defendants' actions and policies made housing unavailable for Mr. Reed because of his race and color, despite his exemplary tenant record at the Subject Property.

69. As a direct, proximate, and foreseeable result of Defendants' discriminatory conduct and policies as described herein, Mr. Reed suffered and continues to suffer substantial harm and injury, both economic and non-economic.

70. As a direct, proximate, and foreseeable result of Defendants' actions and policies as described herein, Plaintiff, The Fair Housing Center, has suffered, continues to suffer, and will in the future suffer substantial, particularized, and concrete injuries.

71. Defendants' unlawful actions, conduct, policies, and practices have frustrated and impaired The Fair Housing Center's mission and purpose, forced them to drain their limited and scarce resources, and interfered with their ability to operate.

72. Defendants' conduct frustrated The Fair Housing Center's mission by interfering with their mission-related activities, impairing their ability to achieve their goals of ensuring equal

and fair access to housing opportunities, by perpetuating segregation in Lucas County, Ohio, and by harming their community.

73. Defendants' discriminatory conduct has forced and required Plaintiff to engage in numerous activities to identify and counteract Defendants' unlawful conduct, policies, and practices, in order to protect residents from unlawful housing discrimination.

74. Plaintiff, The Fair Housing Center, has conducted extensive investigations of race-related issues at Defendants' properties.

75. The investigations have included research, data gathering, policy analysis, site visits, education and outreach, extensive discussions between staff, advocacy and negotiation at the Ohio Civil Rights Commission, and advising Mr. Reed of his rights under the Fair Housing Laws.

76. Plaintiff, The Fair Housing Center's, diversion of time and resources to address Defendants' discriminatory conduct has forced The Fair Housing Center to suspend other projects that would have helped to further its mission, including multiple training sessions, investigation of other housing providers, missed speaking engagements, delaying its Analysis of Impediments to Fair Housing Study in Lucas County, Ohio, and other testing-related activity.

77. The Fair Housing Center will continue to divert its scarce resources and have its mission frustrated until Defendants' discriminatory conduct ceases and the harm caused by Defendants to the organization, residents, and prospective residents are remedied and resolved.

78. Mr. Reed has incurred actual economic and non-economic damages because of Defendants' discriminatory conduct of denying him housing opportunity and subjecting him to different

terms, conditions, privileges, and services in renting and applying for a unit compared to other residents.

79. Wherefore, Plaintiffs now demand judgment against Defendants and an award of compensatory and punitive damages, as well as attorney fees/costs as permitted by the Fair Housing Act.

**CAUSES OF ACTION**

**COUNT I: VIOLATION OF THE FAIR HOUSING ACT OF 1968, as amended**

**42 U.S.C. § 3601, *et seq.* (Race and Color Discrimination)**

80. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 79 as if fully restated herein.

81. Defendants conduct and policies as described in this Complaint constitute discrimination against Plaintiffs by failing or refusing to negotiate or otherwise making housing unavailable on the basis of race and color in violation of 42 U.S.C. § 3604(a).

82. Defendants' conduct and policies as described in this Complaint constitute discrimination against Plaintiffs in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, on the basis of race and color in violation of 42 U.S.C. § 3604(b).

83. Defendants' policy banning all applicants with a criminal conviction for assault has a disproportionate effect on Black, African American males like Mr. Reed and is therefore discriminatory.

84. As a direct and proximate result of Defendants' discriminatory conduct and policies, Plaintiffs have suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

85. Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial, as well as additional legal and equitable relief as the Court deems proper.

## COUNT II - VIOLATION OF THE OHIO CIVIL RIGHTS ACT

## OHIO REV. CODE § 4112.02(H), *et seq.* (Race and Color Discrimination)

86. Plaintiffs restate and reallege each and every allegation in Paragraphs 1 through 85 as if fully restated herein.

87. Defendants' conduct and policies as described in this Complaint constitute discrimination against Plaintiffs by failing or refusing to negotiate or otherwise making housing unavailable on the basis of race and color in violation of Ohio Rev. Code § 4112.02(H)(1).

88. Defendants' conduct and policies as described in this Complaint constitute discrimination against the Plaintiffs in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, on the basis of race and color in violation of Ohio Rev. Code § 4112.02(H)(4).

89. Defendants' criminal convictions policy banning all applicants with a criminal conviction for assault leads to a disproportionate effect on Black, African American males like Mr. Reed and is therefore discriminatory.

90. As a result of Defendants' discriminatory conduct and policies, Plaintiffs have suffered damages and are aggrieved persons, as defined in Ohio Rev. Code § 4112.051.

91. Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial, as well as additional legal and equitable relief as the Court deems proper.

**PRAYER FOR RELIEF**

**WHEREFORE**, due to Defendants' discriminatory conduct and policies as described herein, Plaintiffs respectfully requests that this Court grant judgment in its favor, and against Defendants, as follows:

**A.** Declaring that Defendants' actions and policies violate the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*., and Ohio Rev. Code § 4112.02, *et seq.*;

**B.** Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct and policies described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

**C.** Awarding compensatory and punitive damages in an amount in excess of $25,000 together with costs and reasonable attorney fees pursuant to 42 U.S.C. § 3613(c).

**D.** Mandate that the Defendants and all their agents and employees receive training on the federal and state Fair Housing Laws; and

**E.** Grant such additional legal and equitable relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues triable as of right.

Respectfully submitted,


*/s/C. Jacob Davis*
C. Jacob Davis (#0101745)
Nalls Davis
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 200-7285
Jacob.Davis@nallslaw.com
Attorney for Plaintiffs, Fair Housing Opportunities
of Northwest, Ohio and Henry Reed


*/s/ George Thomas*

George Thomas (#0083354)
The Fair Housing Center
326 N. Erie Street
Toledo, Ohio 43604
Phone: (419) 243-6163
Email: gthomas@toledofhc.org
Attorney for Plaintiffs, Fair Housing Opportunities
of Northwest Ohio, Inc., and Henry Reed


**DATED:** June 26, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that service of the Complaint is being made upon Defendants as required by the Federal Rules of Civil Procedure via certified mail, return receipt requested, or another form of proper service at the addresses listed in the caption of this Complaint.

Respectfully submitted,

*/s/C. Jacob Davis*
_____
C. Jacob Davis (#0101745)
Attorney for Plaintiffs

**EXHIBIT 1 – NOTICE OF LEASE TERMINATION**



# KWAPICH
## REAL ESTATE COMPANIES

Notice of Non-Renewal

Apartment 5113-09

November 16, 2021

Dear Resident(s):

This letter is to notify you that Kwapich Real Estate Companies (KREC) have elected to non-renew your current lease, which expires on 12/31/2021. You will need to vacate your apartment no later than 12/31/2021.

Please fill out and return the enclosed Notice to Vacate form to our Leasing Office. Upon move out, your apartment will be inspected for damages. Any damages or other balance(s) owed will be deducted from your Security Deposit of ($525), which was paid at the time of move-in.

Any remaining Security Deposit will be refunded to you within 30-days of your move out to the forwarding address provided on your Notice to Vacate form.

Please see the enclosed Move-Out Information Sheet for more information.

Respectfully,
Kwapich Real Estate Companies

Secor Cedars - Criminal
5125 Secor Rd #5
Toledo, OH 43623


Nov 16, 2021


Henry L. Reed
5113 Secor RD
Toledo, OH 43623


Dear Henry L. Reed,


Thank you for your recent rental application. You authorized us to obtain a tenant screening report containing credit and other information about you to help us evaluate whether you meet the rental criteria for the property where you applied. If a copy of our screening criteria was not already provided to you, please contact the property for this information.


Your rental application was declined because you or the group you applied with did not meet the property's minimum rental requirements. For privacy reasons, this letter only discloses your individual results to you. If you applied as part of a group, this letter does not include the individual results for any other member of your group.


Your individual result was affected by:


* Criminal History Does Not Meet Property Requirements


Note: If you applied with a group and your individual result is not listed above, it means your individual information was not a negative factor in the group decision.


Because your individual or group application was declined, we are required by the Fair Credit Reporting Act, 15 U.S.C. section 1681 et seq. to provide you with this adverse action letter.


Although we are solely responsible for our rental decision, it was based in whole or in part on information contained in a tenant screening report provided to us by:


RentGrow, Inc.
177 Huntington Ave, Suite 1703 #74213
Boston, MA 02155-3153
(800) 898-1351
www.rentgrow.com


Because we made the decision about your rental application, RentGrow cannot address the specific reasons for our decision. However, you can contact RentGrow directly to get a copy of your tenant screening report. If you applied as part of a group, please note that RentGrow will not share your tenant screening report with any other group member and will not share any other group member's screening report with you. You also have the right to:


* Obtain a free copy of your tenant screening report from RentGrow by contacting them directly within 60 days of receipt of this notice.


* Contact RentGrow directly to initiate a dispute of any information in your tenant screening report you believe is inaccurate or incomplete.


* Obtain a free copy of your credit report directly from RentGrow, which provided it to RentGrow, if you request it from the credit bureau within 60 days from the date of this notice. The credit bureau's contact information is listed on your tenant screening report and is also readily available on-line.


You may also have additional rights under the credit reporting or consumer protection laws in your state. For more information, please contact your state or local consumer protection agency or state attorney general's office.


CREDIT SCORE DISCLOSURE
If your tenant screening report includes a VantageScore® or FICO® credit score, our decision may also have been based in whole or in part on that score. Your credit score is a number between 300 and 850 and is a reflection of the information in your credit report and can change depending on how the information in your credit report changes. RentGrow plays no role in how your credit score is determined.


* Your credit score: Not applicable
* Date of your credit score: Not applicable
* Source of your credit score: Not applicable
* Key factors that adversely affected your credit score: Not applicable


Thank you.

**EXHIBIT 2 – OCRC LETTER OF DETERMINATION**



# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine
Commissioners: Lori Barreras, Chair | J. Rita McNeil Danish | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

**February 9, 2023**

**\*\*\*\*Mailed Date: February 9, 2023**

Henry Reed
1116 Grand Avenue
Toledo, OH 43606



Paul Kwapich, President
Kwapich Real Estate Companies
River Asset Management LLC
204 West Wayne Street
Maumee, OH 43537

### LETTER OF DETERMINATION
Henry Reed v. 5109 Secor, LLC; Kwapich Real Estate Companies;
River Asset Management, LLC; KLGLTGAJG, LLC
TOLH2(41474)05132022/05-22-5852-8

**FINDINGS OF FACT:**

On May 13, 2022, Charging Party, Henry Reed, filed an affidavit with the Ohio Civil Rights Commission ("Commission") alleging Respondent(s), 5109 Secor, LLC; Kwapich Real Estate Companies; River Asset Management, LLC; KLGLTGAJG, LLC (herein after referred to as the "Respondent") refuse to rent, sell or deal with and applied different terms and conditions based on race and color. All jurisdictional requirements for filing a charge have been met.

Respondent 5109 Secor, LLC is the owner of the property. Kwapich Real Estate Companies, River Asset Management, LLC, KLGLTGAJG, LLC manages the premises known as the Secor Flats located at 5109 Secor Road, Toledo, Ohio 43623. Secor Flats is an apartment complex with 121 one and two bedroom units. The property was built in 1965.

Charging Party is African American. Charging Party states, he had been renting a unit at Secor Flats apartments for about three years when the property was sold. Charging Party was on a month-to-month lease. Charging Party was given a notice of lease termination in November of 2021 by the new property management company, Respondent Kwapich Real Estate, now doing business as River Asset Management. The notice included a statement that his renewal application was denied due to his criminal history. Charging Party states, he was confused, as he had never been asked to complete a new application for the unit and was already renting the unit. Charging Party states his last criminal history offense was several years ago in 2015. Charging Party states, he filed this charge of housing discrimination alleging that the Respondent's criminal history policy, which resulted in the non-renewal of his lease and termination of his residency has a discriminatory impact on African American applicants and residents.

Respondents deny that they have discriminated against Charging Party or that they engage in discrimination on the basis of race and color.

---

TOLEDO REGIONAL OFFICE | One Government Center, 640 Jackson St., Suite 936, Toledo, OH 43604
PHONE: 419-245-2900 | TOLL FREE: 1-888-278-7101 | TTY: 614-752-2391 | FAX: 419-245-2668
www.crc.ohio.gov

Henry Reed v. 5109 Secor, LLC; Kwapich Real Estate Companies;
River Asset Management, LLC; KLGLTGAJG, LLC
TOLH2(41474)05132022/05-22-5852-8
Page 2

Respondents state Charging Party entered into his most recent lease agreement for the premises located at 5113 Secor Road, Apartment 9, Toledo, OH 43623 effective June 1, 2020.

Respondents state in December 2020, after a change in ownership, Respondents were hired to manage the subject property. Part of the Respondent's policy is to run criminal background checks on all tenants who are applying for renewal of their lease. Respondents also run a credit check on any applicant for an apartment complex managed by the Respondents. According to Respondent, this policy is in place to lower the rates of crime on the premises of apartment complexes managed by the Respondents. Furthermore, this policy also helps to secure the peaceful enjoyment of the residents of premises owned and operated by the Respondents.

Respondents state on or around November 12, 2021, Charging Party filed an application for renewal of his lease. Specifically, part of the renewal application states that "I am giving Kwapich Real Estate Companies permission to run a background check on myself and any co-signers." Upon running the criminal background check, it was revealed that Charging Party had been convicted of felonious assault in 2016. Furthermore, Charging Party was incarcerated for felonious assault until 2020. According to the policy of the Respondents, a crime like felonious assault is disqualifying in terms of being able to rent to the tenant or applicant. Therefore, Charging Party was informed that the Respondents would be unable to renew his lease agreement.

Respondents state Charging Party subsequently vacated the premises without incident and was sent a move out statement detailing any outstanding charges and the amount, if any, withheld from his security deposit.

Respondents state it screen all applicants for criminal background regardless of their race. Respondents further completes an individualized assessment to determine if any criminal history would pose a threat to the health and welfare of the community. In this case, Charging Party was convicted of felony assault and was released in 2020. Such a conviction, and with Charging Party having been released so recently, evidences a propensity to hurt others. Respondents would treat any other applicant in a similar manner.

Documents show that Charging Party resided at the subject property since June 1, 2020. Charging Party's application for lease renewal was on November 12, 2021. Charging Party had no late rental payments or complaints filed while living at the subject property.

Documents show Charging Party's felonious assault charge was on April 28, 2016. Charging Party served time and was released on February 10, 2020. Charging Party has had no new criminal charges since his release.

Documents show that Respondents completed the background check for Charging Party's lease renewal application and denied Charging Party due to criminal history.

Respondents state they have a blanket policy for criminal offenses that will prevent rental of a unit owned by Respondents.

Henry Reed v. 5109 Secor, LLC; Kwapich Real Estate Companies;
River Asset Management, LLC; KLGLTGAJG, LLC
TOLH2(41474)05132022/05-22-5852-8
Page 3

Pursuant to HUD's guidelines:

> "A policy or practice that fails to take into account the nature and severity of an
> individual's conviction is unlikely to satisfy this standard. Similarly, a policy or practice
> that does not consider the amount of time that has passed since the criminal conduct
> occurred is unlikely to satisfy this standard, especially in light of criminological research
> showing that, over time, the likelihood that a person with a prior criminal record will
> engage in additional criminal conduct decreases until it approximates the likelihood that
> a person with no criminal history will commit an offense. Accordingly, a policy or practice
> that fails to consider the nature, severity, and recency of criminal conduct is unlikely to
> be proven necessary to serve a "substantial, legitimate, nondiscriminatory interest" of the
> provider. The determination of whether any particular criminal history-based restriction
> on housing satisfies step two of the discriminatory effects standard must be made on a
> case-by-case basis."

Pursuant to HUD Office of General Counsel Guidance:

Information shows that where a policy or practice excludes individuals with only certain types of
convictions, a housing provider will still bear the burden of proving that any discriminatory effect caused
by such policy or practice is justified. Such a determination must be made on a case-by-case basis.
Selective use of criminal history is a pretext for unequal treatment of an individual.

National statistics provide grounds for HUD to investigate complaints challenging criminal history
policies. Nationally, racial and ethnic minorities face disproportionately high rates of arrest and
incarceration. For example, in 2013, African Americans were arrested at a rate more than double their
proportion of the general population.

Moreover, in 2014, African Americans comprised approximately 36 percent of the total prison population
in the United States, but only about 12 percent of the country's total population. In other words, African
Americans were incarcerated at a rate nearly three times their proportion of the general population.

Hispanics were similarly incarcerated at a rate disproportionate to their share of the general population,
with Hispanic individuals comprising approximately 22 percent of the prison population, but only about
17 percent of the total U.S. population. In contrast, non-Hispanic Whites comprised approximately 62
percent of the total U.S. population but only about 34 percent of the prison population in 2014. The
imprisonment rates for African Americans are almost six times greater than for Whites, and for Hispanics,
it is over twice that for non-Hispanics.

Respondents are practicing a policy that allows for the denial for rental applicants with any criminal
conviction. Information shows a landlord will not be allowed to just have a policy or procedure allowing
for the denial of rental applicants with any criminal record of conviction. HUD guidelines indicate that
criminal arrests and even in certain cases, prior criminal convictions will not be sufficient to deny housing
to a rental applicant.

Henry Reed v. 5109 Secor, LLC; Kwapich Real Estate Companies;
River Asset Management, LLC; KLGLTGAJG, LLC
TOLH2(41474)05132022/05-22-5852-8
Page 4

Respondents have failed to show that its policy regarding criminal convictions is necessary to serve a substantial, legitimate, nondiscriminatory interest that could be served by a practice that has a discriminatory effect. In fact, Respondents indicated that based on Charging Party's criminal history, he was a direct threat to other tenants although there was no proof of any violent acts committed while Charging Party was a tenant.

Respondents, without relying on sound reasoning for its business decisions, has failed to show where the policy is reasonable and necessary. Respondents have failed to show where they took into consideration Charging Party's previous rental history and any other mitigating factors regarding Charging Party's offense.

As a result of Respondent's rejection, Charging Party lost an opportunity for housing.

Convictions should be considered on a case-by-case basis, considering mitigating factors, such as the person's age at the time a crime was committed, evidence of good behavior since the crime was committed, and the age of the conviction. Respondents failed to do that in Charging Party circumstance. Failure to do so resulted in a discriminatory practice affecting Charging Party.

Pursuant to 4112 discriminating against any person in the availability, terms, conditions, or privileges of occupancy because of race is unlawful.

**DECISION:**
The Ohio Civil Rights Commission determines it is **PROBABLE** that Respondent has engaged in an unlawful discriminatory practice in violation of Ohio Revised Code Chapter 4112. Therefore, the Commission hereby orders that this matter be scheduled for **CONCILIATION**.

In accordance with Ohio Revised Code § 4112.05(A) and Ohio Administrative Code § 4112-3-03(C), the Commission invites you to participate in conciliation by informal methods of conference, conciliation, and persuasion. Enclosed is a draft Conciliation Agreement and Consent Order for your consideration.

Brad Adams has been assigned as Conciliator and can be reached by telephone at 419-245-2911 or by email at brad.adams@civ.ohio.gov. **Please contact the Conciliator to discuss the conciliation process.**

If the Commission's attempts at conciliation are unsuccessful, a formal complaint will be issued, and the case will be scheduled for a public hearing.

**NOTICE OF RIGHT TO REQUEST RECONSIDERATION:**
Pursuant to Ohio Administrative Code § 4112-3-04, you have the right to request reconsideration of this determination of the Commission. The application must be in writing and state specifically the grounds upon which it is based. If you wish to appear before the Commissioners to present oral arguments supporting your request, you must specifically make a request to appear in writing.

This request must be sent to the Compliance Department, Ohio Civil Rights Commission, 30 East Broad Street, 5th Floor, Columbus, Ohio 43215. You must submit the request for reconsideration, along with all additional evidence or supporting documentation, within **TEN (10) days** of the date of mailing of this notice.

Henry Reed v. 5109 Secor, LLC; Kwapich Real Estate Companies;
River Asset Management, LLC; KLGLTGAJG, LLC
TOLH2(41474)05132022/05-22-5852-8
Page 5


Any application for reconsideration or additional materials received by the Compliance Department in the
Commission's Columbus Central Office after the ten-day period has expired will be deemed untimely
filed. Extensions of this ten-day filing period are not permitted.

**\*\*Please note, conciliation efforts do not toll the applicable time period for submitting a Request for
Reconsideration. See, Ohio Administrative Code § 4112-3-04.*

FOR THE COMMISSION,

*William E. Baskin, Jr.*

William E. Baskin, Jr.
Toledo Regional Supervisor

Enclosure: Draft Conciliation Agreement and Consent Order

WEB/sms


**Additional Respondent's**
KLGLTGAJG LLC
c/o Jerome Parker, Registered Agent
One Seagate, Summit Street, Suite 1645
Toledo, OH  43604


**Representative for Charging Party:**
Rachael Fortlage, Staff Attorney
The Fair Housing Center
326 N. Erie Street,
Toledo, OH  43604
rfortlage@toledofhc.org

**Respondent's Representative**
/s/ Dimitri Hatzifotinos
Willis Law Firm, LLC
1160 Goodale Blvd.
Grandview Heights, OH  43212
dhatzifotinos@willislawohio.com

Alexander Maxwell
Willis Law Firm, LLC
1160 Goodale Blvd.
Grandview Heights, OH 43212
amaxwell@willislawohio.com